IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs June 13, 2011

## MICHAEL D. WILLIAMS v. GEORGE M. LITTLE ET AL.

**Appeal from the Chancery Court for Hickman County**
**No. 08104C     Jeffrey S. Bivins, Judge**

---

**No. M2010-02241-COA-R3-CV - Filed September 13, 2011**

---

Inmate filed a petition for writ of certiorari challenging his conviction of the prison disciplinary offense of conspiracy to violate state law. The chancery court considered the merits of the inmate's petition and granted the defendants' motion to dismiss. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR. and RICHARD H. DINKINS, JJ., joined.

Michael D. Williams, Whiteville, Tennessee, Pro Se.

Robert E. Cooper, Jr., Attorney General and Reporter; Bill Young, Solicitor General; and Arthur Crownover II, Senior Counsel; for the appellees, Tennessee Department of Correction, George Little, James Fortner, Nicky Jordan, Tony Parker, Roger Hemby, Mark Turney, Scott Miller, Jerry Cotham, Gregory Addington, Sgt. Woods and Capt. Toole.

### OPINION

FACTUAL AND PROCEDURAL BACKGROUND

Michael D. Williams is an inmate in the custody of the Tennessee Department of Correction ("TDOC"). During the relevant time period, he was incarcerated at the Turney Center Industrial Prison in Only, Tennessee.

On December 5, 2007, Williams was charged with the disciplinary infraction of conspiracy to violate state law, in particular Tenn. Code Ann. § 39-16-201, which prohibits the introduction or possession of contraband in penal institutions. The disciplinary report describes the offense as follows:

An investigation into introduction of narcotics and contraband has been conducted by the Tennessee Department of Correction Division of Internal Affairs special agents. The results of this investigation is that on November 28, 2007 agents [seized] 12 pounds of tobacco, 15.7 ounces of marijuana, 5 cellular phones, DVD's, CD's, lighters, rolling papers, cell phone chargers, wave caps and various cosmetics that were delivered by a former CCA employee named Wendy Strange to Tricor Farm Mgr. Rodney Hemby. According to statements secured from Hemby this operation was at the direction of inmate Michael Williams 101154 an inmate at Turney Center Industrial Prison. Mr. Hemby has admitted that he was instructed to hide the items on a Tricor milk truck and to deliver these items to Williams within the confines of Turney Center prison. Mr. Hemby was arrested by special agents for his part in this criminal act. Due to this I am charging Mike Williams 101154 with CVS 39-16-201.

The reporting staff person and preparer of the report was Sergeant Nicky Jordan.

A hearing was held on December 12, 2007 before a three-member disciplinary board. Williams pled not guilty and signed a waiver of his right to call witnesses on his behalf. According to the hearing summary signed by all three board members, Williams stated that there was no evidence presented "to hook inmate Williams with Mr. Hemby" and that Williams did not "know Mr. Hemby or a Wendy Strange." The description of the physical evidence presented is as follows: "evidence #723180 presented by Sgt. Jordan (see CR-1831) plus testimony of Sgt. Jordan." Sergeant Jordan's testimony is summarized in the report as follows:

Received call concerning a Tri-Cor employee. Special Agent Scott Miller told Sgt. Jordan that an assortment of items was to be brought into Turney Center for inmate Williams #101154. The Tri-Cor employee was Mr. Hemby, he made statements that Mr. Hemby had done this before. Mr. Hemby along with Wendy Strange was providing items via the Tri-Cor milk truck to inmate Williams. Mr. Hemby identified inmate Williams as the person who was to receive the items.

Inmate Williams asked Sgt. Jordan about the criminal investigation. Sgt. Jordan tried to explain that he is limited to what he knew about the investigation. Special Agt. Miller spoke with Sgt. Jordan identifying inmate Williams by Mr. Hemby as the person who was to receive the items. Mr. Hemby did admit he had brought items to inmate Williams on 3 different times.

The disciplinary board found Williams guilty based on the investigation "where Special Agent Miller named state employee Mr. Hemby [who] named I/M Williams." The punishment was a $5 fine, 30 days punitive, and loss of 180 PSRC days.

Williams appealed the disciplinary board decision to the warden and then to TDOC Commissioner.[1] Both appeals were denied.

On April 9, 2008, Williams filed a petition for writ of certiorari seeking review of the actions of the disciplinary board. After considering the briefs of both parties, the trial court entered an order on October 5, 2010, dismissing Williams's petition on the grounds that he "failed to show that the board acted illegally, fraudulently, or arbitrarily."

STANDARD OF REVIEW

The scope of review with respect to a common law writ of certiorari is limited.[2] *Watts v. Civil Serv. Bd.*, 606 S.W.2d 274, 276 (Tenn. 1980); *Leonard Plating Co. v. Metro. Gov't of Nashville & Davidson County*, 213 S.W.3d 898, 903 (Tenn. Ct. App. 2006). A reviewing court may grant relief only when the board or agency has exceeded its jurisdiction or acted illegally, arbitrarily, or fraudulently. Tenn. Code Ann. § 27-8-101; *McCallen v. City of Memphis*, 786 S.W.2d 633, 638 (Tenn. 1990). The scope of review by the appellate courts is no broader than that of the chancery court in these cases with respect to evidence presented before the board. *Watts*, 60 S.W.2d at 277.

Reviewing a common law writ of certiorari "does not extend to a redetermination of the facts found by the board or agency whose decision is being reviewed." *Leonard Plating*, 213 S.W.3d at 903. Courts are not permitted to "(1) inquire into the intrinsic correctness of the decision, (2) reweigh the evidence, or (3) substitute their judgment for that of the board or agency." *Id.* at 903-04 (citations omitted). Rather, the courts must review the board's decision to determine whether there is any material evidence to support the decision; "a decision without evidentiary support is an arbitrary one." *Id.* at 904. The determination of whether the board's decision is supported by material evidence is a question of law. *Id.* To support a board's decision, the material evidence "must exceed a scintilla of evidence but may be less than a preponderance of the evidence." *Id.*

---

[1]Although the official administrative record filed by the TDOC does not include any appeal documents, exhibits attached to Williams' petition for certiorari suggest that he appealed the decision to the warden and to the TDOC commissioner.

[2]While Williams petition cites both common law and statutory writs of certiorari, the common law writ of certiorari is the only available vehicle for review of a prison disciplinary proceeding. *See Robinson v. Clement*, 65 S.W.3d 632, 634 n.1 (Tenn. Ct. App. 2001).

ANALYSIS

Williams makes two main arguments on appeal: (1) that the trial court erred in finding that his brief was untimely; and (2) that the disciplinary board exceeded its jurisdiction and acted illegally, fraudulently, and arbitrarily.

(1)

In an order entered on May 12, 2009, the trial court stated that the petitioner had 30 days from the respondents' filing of a certified copy of the record to file and serve a brief. We need not delve into the issue of whether Williams timely filed his brief in accordance with this order because in its October 2010 order of dismissal, the court specifically stated that, although the petitioner's brief was untimely filed, the court considered the petitioner's brief and decided the case on its merits. Thus, Williams was not in any way prejudiced by the finding of untimeliness. *See* Tenn. R. App. P. 36(b).

(2)

Williams bases his position that the disciplinary board exceed its jurisdiction and acted illegally, fraudulently, or arbitrarily upon several separate arguments, which we consider in turn.

First, Williams asserts that there was no evidence to support his conviction. He cites the Uniform Disciplinary Procedures ("UDP"), which are intended to "provide for the fair and impartial determination and resolution of all disciplinary charges placed against inmates." TDOC Policy No. 502.01(II). Although the UDP does not give inmates due process guarantees greater than those that are constitutionally required, deviations from the UDP may warrant judicial relief if the inmate can show "substantial prejudice as a result and that the error would have affected the disposition of the case." TDOC Policy No. 502.01(V); *see Willis v. Tenn. Dep't of Corr.*, 113 S.W.3d 706, 713 (Tenn. 2003). In other words, the departure from the UDP must "effectively deny the prisoner a fair hearing." *Jeffries v. Tenn. Dep't of Corr.*, 108 S.W.3d 862, 873 (Tenn. Ct. App. 2002).

Unlike in a court of law, a prison disciplinary infraction need only be proven by a preponderance of the evidence. TDOC Policy No. 502.01(VI)(L)(4)(c)(1). And, on a writ of certiorari, this court must affirm the board's decision "if there is any material evidence to support it." *Pirtle v. Tenn. Dep't of Corr.*, No. W2006-01220-COA-R3-CV, 2007 WL 241027, at *5 (Tenn. Ct. App. Jan. 30, 2007) (citing *Watts*, 606 S.W.2d at 276-77). Williams essentially argues that the testimony of Sgt. Jordan could not be substantiated and that Sgt. Jordan presented no supporting evidence. Under the UDP, however, the disciplinary board

"shall consider all evidence which it finds to be reliable, whether or not such evidence would be admissible in a court of law." TDOC Policy No. 502.01(VI)(L)(4)(c)(2). Thus, the disciplinary board can base its decision on hearsay if the evidence is deemed reliable. *See Shaffer v. Tenn. Dep't of Corr.*, No. M2010-01742-COA-R3-CV, 2011 WL 1842971, at *3 (Tenn. Ct. App. May 12, 2011); *Patterson v. Tenn. Dep't of Corr.*, No. W2009-01733-COA-R3-CV, 2010 WL 1565535, at *6 (Tenn. Ct. App. Apr. 20, 2010). According to the hearing summary, the board was presented with an item of evidence in addition to the testimony of Sgt. Jordan.

In light of Sgt. Jordan's testimony regarding the findings of the investigation by Special Agent Scott Miller, we must conclude that there is some material evidence to support the decision of the disciplinary board. As stated above, it is not within this court's scope of review to evaluate the correctness of the board's decision or reweigh the evidence. *Leonard Plating*, 213 S.W.3d at 903-04.

Williams' second assertion is that the hearing summary is "false and inaccurate" and that he was not given the opportunity to cross-examine the reporting official. Under the UDP, the disciplinary board is required to render a CR-1834, or hearing summary, "stating detailed reasons" for the decision and "summarizing the evidence which led to such decision." TDOC Policy No. 502.01(VI)(L)(4)(n)(5). Williams objects that the hearing summary provided does not adequately reflect the testimony of Sgt. Jordan, who allegedly stated, "I can't answer any questions concerning this case because I don't know and I have not investigated any aspect of the case." The summary does, however, contain a similar statement: "Sgt. Jordan tried to explain that he is limited to what he knew about the investigation." Williams further objects that the summary contains only limited information about the investigation. According to the summary, the board based its decision on the information obtained during the investigation that Mr. Hemby was a state employee who brought contraband into the prison, and that Mr. Hemby identified Williams as a prisoner to whom he brought the contraband items. Williams has not identified any false or inaccurate statements in the hearing summary, and we find that it complies with UDP requirements.

As Williams clarifies in his reply brief, his real complaint is that he was denied the right to cross-examine his accuser and to review all adverse documentation. The crux of his position here is that he should have been allowed to confront the original source of the information from the investigation, presumably Special Agent Miller, not someone who received the information second or third hand. Our Supreme Court has stated that prisoners enjoy only a "qualified right to introduce evidence and call witnesses in disciplinary proceedings." *Willis*, 113 S.W.3d at 713. As discussed above, the UDP allows the board to rely on any evidence it deems reliable. TDOC Policy No. 502.01(VI)(L)(4)(c)(2). The right to confront one's accuser is not applicable to disciplinary proceedings. *Holmes v. Tenn.*

-5-

*Dep't of Corr.*, No. E2008-00894-COA-R3-CV, 2009 WL 1065941, at \*4 (Tenn. Ct. App. Apr. 21, 2009); *Keen v. Tenn. Dep't of Corr.*, No. M2007-00632-COA-R3-CV, 2008 WL 539059, at \*4 n.3 (Tenn. Ct. App. Feb. 25, 2008).

Moreover, as the defendants point out, the record does not reflect that Williams submitted a CR-3511, a witness request form required to be submitted 24 hours before the hearing by an inmate who wishes to have witnesses present. TDOC Policy No. 502.01(VI)(L)(4)(d)(1). In fact, the hearing summary contains a statement purported to be signed by Williams waiving the right to call witnesses on his behalf. This court has previously denied relief to an inmate claiming he was not allowed to call witnesses when there is nothing in the record showing that the inmate made such a request. *See Rogers v. Payne*, No. E2010-00523-COA-R3-CV, 2010 WL 4272745, at \*3 (Tenn. Ct. App. Oct. 28, 2010); *Keen*, 2008 WL 539059, at \*5.

As to adverse documentation, Williams seems to be arguing that the statements of Special Agent Miller should have been provided to the board and to him. The UDP gives an inmate the right to "cross-examine any witness (except a confidential source) who testified against him/her and to review all adverse documentary evidence (except confidential information)." TDOC Policy No. 502.01(VI)(L)(4)(c)(3). The board based its decision on Sgt. Jordan's testimony concerning the findings of Agent Miller's report. We know of no provision of the UDP that required the board to get a statement from Agent Miller.

Williams' final argument is that he was denied the opportunity to appeal the decision of the disciplinary board. The defendants do not argue on appeal that Williams failed to exhaust his administrative remedies. We need not consider any errors alleged to have occurred during the administrative appeal process because this court has determined, as did the trial court, that there is material evidence to support the decision of the disciplinary board and Williams has failed to show that the board acted illegally, fraudulently, or arbitrarily.

CONCLUSION

The decision of the chancery court is affirmed. Costs of appeal are assessed against Williams and execution may issue if necessary.

_____
ANDY D. BENNETT, JUDGE